THE STATE OF NEVADA, PETITIONER, *v.* THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF WASHOE, AND THE HONORABLE CHARLES M. McGEE, DISTRICT JUDGE, RESPONDENTS, AND JULIAN MARTINEZ GARCIA AND JOSE CELESTINO, REAL PARTIES IN INTEREST.

No. 23810

December 4, 1992 842 P.2d 733

*Dorothy Nash Holmes,* District Attorney and *David H. T.*

---

*Wayment,* Deputy District Attorney, Washoe County, for Petitioner.

*M. Jerome Wright,* Reno, for Real Parties in Interest.

## OPINION

*Per Curiam:*

This petition for a writ of mandamus or prohibition seeks an order from this court precluding the district court from giving a proposed jury instruction in a criminal trial pending below. The district court has stayed the proceeding below pending our resolution of this petition, and has allowed the jurors, who are still under oath, to go home.

The criminal trial is a prosecution for trafficking in a controlled substance, cocaine. The district court has indicated its intention to give the following instruction to the jury:

If you find beyond a reasonable doubt that either Defendant,

or both of the Defendants, unlawfully possessed a controlled substance, but that the amount of the substance, *i.e.*, 14 grams or more, was purely and entirely coincidental (that is to say that either or both of the Defendants had no prior knowledge of the trafficking volume of illegal drugs within their presence and control), then you may find either or both Defendants guilty of the lesser included offense of unlawful possession of a controlled substance. A form of a jury verdict which allows this result is provided among the verdict forms.

The state contends that this proposed instruction is incorrect as a matter of law, because it places a burden on the state of proving that the defendants knew the amount of the controlled substance they possessed and that such an amount might subject them to a charge of trafficking. The state argues that no such requirement exists in the statute defining the crime of trafficking in a controlled substance. We agree.

NRS 453.3385 provides:

**453.3385 Trafficking in controlled substances: Schedule I substances except marihuana.** Except as authorized by the provisions of NRS 453.011 to 453.552, inclusive, any person who knowingly or intentionally sells, manufactures, delivers or brings into this state or who is knowingly or intentionally in actual or constructive possession of any controlled substance which is listed in schedule I, except marihuana, or any mixture which contains any such controlled substance shall be punished, if the quantity involved:

1. Is 4 grams or more, but less than 14 grams, by imprisonment in the state prison for not less than 3 years nor more than 20 years and by a fine of not less than $50,000.

2. Is 14 grams or more, but less than 28 grams, by imprisonment in the state prison for life or for a definite term of not less than 10 years and by a fine of not less than $100,000.

3. Is 28 grams or more, by imprisonment in the state prison for life or for a definite term of not less than 25 years and by a fine of not less than $500,000.

Pursuant to the statute, the element of knowledge or intent that the state must prove beyond a reasonable doubt is that the criminal defendant knowingly or intentionally possessed, sold, manufactured, delivered or brought into this state a controlled substance. The penalty for trafficking in a controlled substance is determined from the amount of the controlled substance involved. The state must prove the amount of the controlled

substance beyond a reasonable doubt; the state is not required to prove that the defendant was aware of the amount of illegal drugs he possessed, or that the defendant was aware that the amount of illegal drugs he possessed might subject him to a charge of trafficking.

We conclude that the proposed jury instruction at issue in this case is incorrect as a matter of law, and that it would be clear error for the district court to give to the jury any instruction that would place on the state a burden of proving any element of scienter on the part of the defendants with respect to the amount of cocaine that they possessed.

 .

A writ of prohibition may issue to arrest the proceedings of a district court exercising its judicial functions, when such proceedings are in excess of the jurisdiction of the district court. NRS 34.320. A writ of prohibition may issue only where there is no plain, speedy, and adequate remedy at law. NRS 34.330. In this case, the district court would exceed its jurisdiction if it were to issue the above-quoted instruction, and the state has no remedy at law. Thus, the preliminary requirements for issuance of a writ have been satisfied. Nevertheless, the more difficult question in this case is whether this court should exercise its discretion to issue an extraordinary writ. *See, e.g.,* State ex rel. Dep't Transp. v. Thompson, 99 Nev. 358, 662 P.2d 1338 (1983) (the exercise of this court's extraordinary power to issue writs is within the sound discretion of this court).

We are reluctant to interfere with an ongoing criminal trial to determine issues of possible error with respect to the issuance of jury instructions. The disruption of the orderly conduct of criminal jury trials is of great concern to us, this case being a fitting example of the reasons for that concern.

We note that the district court has released the jurors to go home, although they are still under oath, and has instructed them that they may not be recalled for a period of thirty to sixty days, the time in which the district judge anticipated this petition for a writ might be pending before this court. This type of disruption of criminal trials has a potential of creating confusion, and might even raise due process concerns under some not too hard to imagine circumstances.

On the other hand, we are not unmindful of the dilemma of the state in circumstances where, as here, the giving of a clearly erroneous instruction essentially mandates a jury verdict of

acquittal or of conviction of a lesser offense where conviction of the greater offense is clearly warranted.[1] This court must, within the bounds of the law, foster policies that aid in the conviction of those who are guilty of criminal activity.

We conclude that the balance of factors in this case favors exercise of our extraordinary powers to issue a writ. Although we do not favor this sort of a disruptive proceeding to challenge trivial differences of opinion with respect to the charging of a jury, when a proposed instruction is manifestly incorrect as a matter of law and of such a nature as to mandate an inappropriate acquittal or conviction of a lesser offense, we believe that the interest of speedy and efficient criminal proceedings must give way to the state's superior interest in insuring that the criminal process is fair and punishes the guilty.

The dissent's observation that "staff reached the conclusion" that the instruction was erroneous is most disturbing and a breach of long-accepted standards of collegiality in appellate courts. One would search in vain for an appellate opinion in which a member of the court delved into the manner in which court deliberations resulted in a decision. JUSTICE YOUNG's comment reveals a total lack of appreciation of the traditions and norms of the appellate process.

Further, the dissent's implication that the conclusion reached in this opinion is that of the staff, rather than that of the court, is a misleading characterization of the decision-making process of this court. In this, as in many matters that come before this court, our legal staff analyzed the legal issues presented, and recommended a disposition to the court. Each justice was individually briefed by the staff, and the matter was then debated in some detail by the five justices at a court conference. This process resulted in the issuance of this opinion by a majority of the court.

As the dissent reveals, our staff prepared the draft disposition in this matter. What the dissent does not disclose, however, is that the disposition was prepared as directed by the justices of this court. This court has always treated the extent of our staff's participation in the preparation of a disposition as confidential court information. We are therefore dismayed that JUSTICE YOUNG, who relies so heavily on his staff for the production of his

---

[1]We express no opinion with respect to the guilt or innocence of the defendants in the action below. We merely recognize that if the state proves beyond a reasonable doubt that the defendants possessed cocaine in an amount greater than 14 grams but less than 28 grams, the defendants should be convicted of mid-level trafficking pursuant to NRS 453.3385(2), regardless of whether they had "prior knowledge of the trafficking volume of illegal drugs within their presence and control."

opinions, would find any aspect of significance in revealing, contrary to established court protocol, the participation of the court's central legal staff in producing the disposition directed by a majority of the court.

Accordingly, we grant this petition. The clerk of this court shall forthwith issue a writ of prohibition precluding the district court from giving to the jury the proposed instruction noted above, and further prohibiting the district court from giving the jury any instruction that would place on the state a burden of proving any element of scienter on the part of the defendants with respect to the amount of cocaine that they possessed.

Young, J., dissenting, with whom MOWBRAY, C. J., joins:

Respectfully, I dissent. In my opinion, granting relief to the petitioner may well serve the cause of justice in this case, but will almost certainly create endless problems in the future for a court already overburdened with an evergrowing criminal caseload. It is a clear message to prosecutors that we will entertain petitions for extraordinary relief during the course of proceedings if a prosecutor is dissatisfied with the decision by the trial judge on a proposed instruction.

On Friday, November 27, 1992, the trial judge stated that he would give the contested instruction. On Tuesday, December 1, 1992, a petition was filed for extraordinary relief in our court.[1] The respondents were not given an opportunity to reply to the petition. I was first advised of the petition by staff on Wednesday, December 2, 1992. An opinion granting the petition for writ of prohibition was signed December 3, 1992. It was a commendable demonstration of speed in the processing of the request for relief.

However, the process is fraught with danger. In most matters, the court receives input from both parties—and sometimes hears oral arguments. This did not occur here. Staff prepared the opinion granting petition for writ of prohibition which was briefly considered by the court and signed.

Staff reached the conclusion that the proposed instruction was erroneous as a matter of law notwithstanding the fact that it had been approved by a respected trial judge and considered at some length in the trial court.

While justice may have been served in the instant case, I am

[1]This petition probably had its origin in comments by this court in a criminal proceeding where we stated that if a prosecutor believed that the trial judge was going to give an improper instruction, the prosecutor "could have timely asked the district court judge for a brief continuance of the trial to enable the district attorney to seek relief by way of an extraordinary writ addressed to this court." Ohlson v. Holmes, Docket No. 23229 (Order Denying Petition for Writ of Mandamus, June 24, 1992, at 4).

fearful that the granting of this writ will be an invitation to prosecutors throughout the state to petition for extraordinary relief when they perceive that error has been committed. In this case, it involves an instruction. However, the principle seems to have a much broader application. If error occurs during voir dire of the jury, or in a motion in limine, or in the admission or refusal to admit evidence, or elsewhere, can the prosecutor be denied relief?

In many cases, the error may not be as clear as the majority believes it to be in this case. Will the respondent be given an opportunity to file a brief in opposition? Will it be necessary to have a conference, or oral argument? If so, the disruption of the trial may be wasteful of judicial resources at both the trial and appellate level. Our court runs the risk of being transformed into a special appellate tribunal for prosecutors only. The majority states, "[T]he interest of speedy and efficient criminal proceedings must give way to the state's superior interest in insuring that the criminal process is fair and punishes the guilty." On the other hand, what about the interests of the defendant? Is not the state also interested in "insuring that the criminal process is fair" for the defendant and permits the innocent to be acquitted—and freed from constraint? While petitioner argues that the state now has no right of appeal in the event of acquittal and should be given the opportunity to prevent error, it would seem that the defendant is entitled to no less speedy consideration—and perhaps vindication. If he must wait until a jury verdict and completion of an appellate process that may go on for a year—it seems hardly fair that he would be confined during this period.

If there is a problem here insofar as the state is concerned, I submit this matter should be addressed by the legislature. Presumably, it could provide that the state would have the right of appeal after completion of the trial resulting in acquittal to secure what would in effect be an advisory opinion and establish the law for future cases.

A similar problem has heretofore been addressed by this court in civil matters. For years litigants had used a petition for special writ to challenge orders in civil matters denying motions to dismiss and motions for summary judgment. Our court wisely said in State ex rel. Dep't Transp. v. Thompson, 99 Nev. 358, 362, 662 P.2d 1338, 1340 (1983),

> We conclude . . . that judicial economy and sound judicial administration militate against the utilization of mandamus petitions to review orders denying motions to dismiss and motions for summary judgment. Therefore, although we reaffirm the principle that we have the power to entertain

such petitions . . . in the exercise of our discretion we will no longer utilize that power.

In the majority opinion, we are opening a door in criminal matters that some nine years ago was closed for civil proceedings. This seems improvident at a time when we have more criminal cases than civil and when it is unlikely that we will receive any relief from an intermediate appellate court for many years to come. I respectfully submit that our system of justice would not perish if the petition were denied in the instant case, and we continue to process criminal cases as we have for many years. For these reasons, I respectfully dissent.